1  ROCKARD J. DELGADILLO, City Attorney
   RICHARD M. BROWN, General Counsel
2  for Water and Power
   JOSEPH A. BRAJEVICH, Asst. General Counsel
3  for Water and Power
   S. DAVID HOTCHKISS (Bar No. 076821)
4  Assistant City Attorney
   FAY A. CHU (Bar No. 121864)
5  Deputy City Attorney
   WENDY K. GENZ (Bar No. 140290)
6  Deputy City Attorney
   111 North Hope Street, Suite 340
7  P. O. Box 51111
   Los Angeles, California 90051-0100
8  Telephone: (213)367-4579
   Attorneys for Defendant
9  Department of Water & Power,
   City of Los Angeles

10

11                  UNITED STATES DISTRICT COURT

12                 CENTRAL DISTRICT OF CALIFORNIA

13

14

15  CONOCOPHILLIPS COMPANY          )   CASE NO. CV07-05742 ABC (JTLx)
                                    )       [Hon. Audrey B. Collins]
16          Plaintiff,              )
                                    )
17      vs.                         )   **DEFENDANT DEPARTMENT OF**
                                    )   **WATER & POWER, CITY OF LOS**
18  DEPARTMENT OF WATER &           )   **ANGELES' MEMORANDUM OF**
    POWER, CITY OF LOS ANGELES,     )   **POINTS AND AUTHORITIES IN**
19                                  )   **SUPPORT OF MOTION TO DISMISS**
            Defendant.              )
20                                  )   [FRCP Rules 12 (b) (1) and (6)]
                                    )
21                                  )   Date:  February 25, 2008
                                    )   Time: 10:00 a.m.
22                                  )   Courtroom: 680
                                    )
23                                  )   Complaint Filed: September 4, 2007
                                    )   Trial Date:       None Set
24  _____)

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE  FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STANDARDS ON MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.     THE COURT LACKS SUBJECT MATTER JURISDICTION . . . . . . . . . 5

         A.  District Courts Have Limited Jurisdiction to Enforce PURPA . . . . . . . 5

         B.  Implementation of PURPA in Los Angeles . . . . . . . . . . . . . . . . . . . . . . 6

         C.  CoP's "As- Applied" Claim Must be Brought in State Court . . . . . . . . 7

    II.    THE COMPLAINT  FAILS TO ESTABLISH A MONELL CLAIM

               OR OTHER BASIS FOR MUNICIPAL LIABILITY . . . . . . . . . . . 10

         A. The Complaint fails to Allege Facts Sufficient to Establish an

            Unconstitutional Municipal Policy . . . . . . . . . . . . . . . . . . . . . . . . . 10

         B. CoP's Request that the Court Substitute its Discretion for That of

            Lawmakers Must be Rejected . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

         C. The Denial of Due Process Claim Does Not Invoke Federal Jurisdiction

            Over Supplemental State Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    III    THE POWER TO SET RATES IS A MUNICIPAL AFFAIR . . . . . . . . . . 15

         A.  Municipal Rates are Subject to Limited Judicial Review . . . . . . . . . . 15

         B.  The City is Entitled to a Reasonable Rate of Return From its Utility . 17

    IV.    PLAINTIFFS' SUPPLEMENTAL STATE CLAIMS ARE

          TIME-BARRED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

         A.    Plaintiffs' State Claim Seeks to Invalidate the City's Electric Rate

            Ordinance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

1

B.   The Statute Of Limitations For All State Causes of Action Is

60 Days . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# TABLE OF AUTHORITIES

## CASES

*American Paper Inst. v. American Elec. Power Serv. Corp.,*
    461 U.S. 402, 404 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Brydon v. East Bay Municipal Utility District*
    (1994) 24 Cal. App. 4th 178 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-

*Bernardi v. City Council*
    (1997) 54 Cal. App. 4th 426, 438 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Bi-Metallic Co. v. Colorado*
    (1915) 239 U.S. 441, 60 L.Ed. 372, 36 S.Ct. 141 . . . . . . . . . . . . . . . . . . . . . . 12

*Bluefield Water Works Co. v. Public Service Commission,*
    262 U.S. 679, 692-93,   S.Ct.     , L.Ed.   (1923) . . . . . . . . . . . . . . . . . . . . 17

*Branch v. Tunnell,*
    14 F.3d 449, 453-54 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*City of Oklahoma City v. Tuttle,*
    471 U.S. 808, 813, 105 S.Ct. 2427, 85 L.Ed. 2d 791 (1985) . . . . . . . . . . . . . . 11

*City of St. Louis v. Praprotnik,*
    485 U.S. 112, 108 S.Ct. 915, 99 L.Ed. 2d 107 (1988) . . . . . . . . . . . . . . . . . . 10

*Conley v. Gibson,*
    355 U.S. 41, 45-46, 2 L.Ed. 2d 80, 78 S.Ct. 99 (1957) . . . . . . . . . . . . . . . . . . . 3

*County of Inyo v. Public Utilities Comm.,*
    (1980) 26 Cal. 3d 154, 165-66. . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, , 14, 15, 16

*Daviton v. Columbia/HCA Healthcare Corp.,*
    241 F.3d 1131, 1133 n.1 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Durant v. City of Beverly Hills*
    (1940) 39 Cal. App. 2d 135, 137 . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 16

*Embarcadero Municipal Improvement District v. County of Santa Barbara et al.*
    (2001) 88 Cal. App. 4th 781 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Fajardo v. County of L.A.,*
    179 F.3d 698, 699 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Friedland v. City of Long Beach*
    (1998) 62 Cal.App.4th 835 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Geraci v. Homestreet Bank,*

iii

347 F.3d 749, 751 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Golden Gate Bridge etc. Dist. v. Luehring*
(1970) 4 Cal.App.3d 204 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Graydon v. Pasadena Redevelopment Agency*
(1980) 104 Cal. App. 3d 631, 645 . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 22

*Greensboro Lumber Co. Georgia Power Co.,*
643 F. Supp. 1345, 1372 (N.D. Ga. 1986) . . . . . . . . . . . . . . . . . . . . 7, 8, 10

*Hansen et al. v. City of San Buenaventura*
(1986) 42 Cal. 3d 1172. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Hensler v. City of Glendale*
(1994) 8 Cal. 4th 1, 22-23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Hills for Everyone v. Local Agency Formation Com.*
(1980) 105 Cal. App. 3d 461, 468 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Horn v. County of Ventura*
(1979) 24 Cal. 3d 605, 613 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Kokkonen v. Guardian Life Ins. Co. of America,*
511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed. 2d 391, 395 (1994) . . . . . . . 4

*Leatherman v. Tarrant County Narcotics Unit,*
507 U.S. 163, 113 S. Ct. 1160, 122 L. Ed.2d. 517 (1993) . . . . . . . . . . . . . . . . 4

*Los Angeles Gas & Elec. Corp. v. RR Comm'n of California,*
289 U.S. 287, 320 (1933) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Mack v. South Bay Beer Distributors, Inc.,*
798 F.2d 1279, 1282 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Massachusetts Institute of Technology v. Massachusetts Dept. of Public Utilities,*
941 F. Supp. 233, 237 (D. Mass.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Monell v. Dept. of Social Services,*
436 U.S. 658, 694, 98 S.Ct. 915, 56 L.Ed.2d 611 (1978) . . . . . . . . . . . . . . . . 10

*Mullis v. United States Bankr. Court,*
828 F.2d 1385, 1388 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*People ex rel. Dept. of Conservation v. Triplett*
(1996) 48 Cal. App. 4th 233, 246 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Picard v. Bay Area Regional Transit District,*
823 F. Supp. 1519 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Shaw v. Hahn,*
56 F.3d 1128, 1129 n.1 (9th Cir. 1995.) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

-iv-

*South Pasadena v. Pasadena Land, etc. Co.*
(1908) 152 Cal. 579, 593 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Morgan*
313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941) . . . . . . . . . . . . . . . . . . . . . . 13

**FEDERAL STATUTES**

<u>**16 United States Code**</u>

§ 824a-3(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5

§ 824a-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

§ 824a-3(g)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

§ 824a-3(g)-(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6

§ 824a-3(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

§ 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

§ 2633 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>**42 United States Code**</u>

§ 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>**PURPA**</u>

§ 210(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

§ 210(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

§ 210(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

§ 210(h)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>**Federal Rules of Evidence**</u>

Rule 201(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Rule 302 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>**18 Code of Federal Regulation**</u>

§ 210(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9

§ 210(h)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

§292.305 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 8

§292.305(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**STATE STATUTES**

<u>**California Code of Civil Procedure**</u>

§§ 860- 870.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

§ 860 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

§ 863 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22

§ 869 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

<u>**Evidence Code**</u>

§ 664 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>**Government Code**</u>

§ 53510 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

§ 53511 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 21

§ 54950. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

§ 54953 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

§ 54954.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

§ 54954.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

§ 54954.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

§ 54956 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

§ 54959 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>**Public Utilities Code**</u>

§ 385 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

§ 453 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

§ 532. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**OTHER AUTHORITIES**

<u>**Los Angeles City Charter**</u>

§ 344 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

§676 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

§§679(c)(9) ........................................................... 20

**<u>Los Angeles City Ordinance</u>**

No. 175722 ...................................................... 3, 11, 19

No. 179268 ............................................................. 3

29 A.L.R. 4th 615, 616-18 ............................................. 15

40 A.L.R. 2d 1331, 1332. ............................................. 15

# INTRODUCTION

The Public Utilities Regulatory Policy Act of 1978 (PURPA) directed the Federal Energy Regulatory Commission (FERC) to adopt regulations that would promote energy purchases from independent generators through "qualifying facilities" (QF) . *American Paper Inst. v. American Elec. Power Serv. Corp.,* 461 U.S. 402, 404 (1983).  State regulatory agencies were then directed to adopt rules which complied with FERC's requirements and which fully implemented PURPA in each state. 16 U.S.C. §824a-3(f). Under 18 C.F.R. § 292.305, an electric utility is required to sell power to a QF at rates that are just and reasonable and in the public interest, and which do not discriminate against the QF in comparison to rates for sales to other customers served by the electric utility. 18 C.F.R §292.305(a)(1).

Plaintiff ConocoPhillips Company (CoP) operates a QF generating electricity in LADWP's service area. CoP purchases standby service from defendant Department of Water & Power, City of Los Angeles (LADWP or City) when its QF is out of service. CoP asserts that although LADWP initially adopted co-generation rates in compliance with FERC regulations, subsequent rate schedules  adopted by ordinance effective January 1, 2005 are unjustified, unfair and unreasonable.

Federal court jurisdiction in cases of this type is limited. Where allegations arise that an electric utility has wholly failed to implement electric rates in compliance with PURPA requirements, federal jurisdiction has been found. However, cases such as this where  LADWP's implementation plan, i.e. its cogeneration rate ordinance, is challenged for its effect on a QF owner, it is deemed an "as applied" challenge which may only be made in state court under PURPA § 210(g), *see* 16 U.S.C. § 824.

Aside from CoP's PURPA allegations, plaintiff also alleges violations of state law and constitutional due process in the enactment of the City's municipal rate ordinances.

1   For the reasons set forth below, CoP's state claims and allegations of constitutional tort

2   are also barred. CoP has not pleaded facts sufficient to constitute any cause of action

3   cognizable by this court.

4

5                          **STATEMENT OF THE   FACTS**

6

7           LADWP is a department of the City of Los Angeles, a municipal corporation of

8   the State of California.  LADWP operates a public utility providing electric power to

9   customers within the City and is subject to obligations under PURPA per the provisions

10  of 16 U.S.C. §824.[1] ( Complaint ¶ 3.) As a nonregulated electric utility LADWP is

11  legally required to comply with the utility obligations under Section 210 of PURPA, 16

12  U.S.C. § 824a-3, and FERC regulations implementing that statute and 18 C.F.R. §

13  292.305. (Complaint ¶ 14.) In implementing PURPA, the Los Angeles City Council

14  previously adopted policies and regulations to encourage cogeneration. (Complaint ¶

15  21.)

16          Plaintiff CoP owns and operates the Los Angeles Refinery within the LADWP's

17  service area, and is a retail customer of LADWP.  CoP owns and operates an electric

18  generator on the site of its refinery that has been certified as a cogeneration QF under

19  PURPA. (Complaint ¶ 3.)  LADWP provides standby service for CoP to serve electricity

20  when CoP's generator is out of service.  (Complaint ¶ 4.)

21          Effective January 1, 2005, LADWP modified its electric rates and  enacted rate

22

23  ─────────────────

24          [1]The City of Los Angeles operates under a freeholders' charter. As a charter city it
    has a right under the California Constitution to operate public utilities for the benefit of
25  its inhabitants. Cal. Const. Art. XI, § 9. Los Angeles is not subject to control of the
    California Public Utilities Commission in the operation of its utilities. *County of Inyo v.*
26  *Public Utilities Comm.,* (1980) 26 Cal. 3d 154, 165-66.

27  ─────────────────────────────────────────────────────────────────────────
                                           3

1   schedules CG-2 and CG-3 for service to customers with their own generation who

2   require standby service from LADWP.  (Complaint ¶ 6.)[2] CoP asserts that these rate

3   schedules violate 18 C.F.R. § 292.305 in that they are unjust and unreasonable, not in the

4   public interest and they discriminate against a QF in comparison to other similarly-

5   situated customers. (Complaint ¶¶ 7-9.)

6       Pursuant to 16 U.S.C §824a-3(h), CoP filed a complaint with FERC, requesting

7   that the Commission enforce its rules and order LADWP to comply with FERC's rules,

8   including 18 C.F.R .§292.305.  In Docket EL05-58, on March 28, 2005, FERC issued a

9   notice of its intent not to initiate an enforcement action.   (Complaint ¶ 17.)

10      CoP invokes jurisdiction in district court under 28 U.S.C §1331 for relief under

11  federal statutes. (Complaint ¶ 1.)  CoP asks that this court declare LADWP's

12  cogeneration rates to be contrary to law and invalid. (Complaint ¶ 18.) CoP also seeks

13  damages and attorneys' fees. (Complaint ¶¶ 40, 43.)

14

15                    **STANDARDS ON MOTION TO DISMISS**

16

17      The function of a motion under Rule 12 (b) of the Federal Rules of Civil

18  Procedure is to determine whether a legally sufficient claim for relief has been set forth

19  in the pleadings. A complaint should be dismissed only if a plaintiff can prove no set of

20  facts in support of his claim which would entitle him to relief.  *Conley v. Gibson*, 355

21  U.S. 41, 45-46, 2 L.Ed. 2d 80, 78 S.Ct. 99 (1957); *Geraci v. Homestreet Bank*, 347 F.3d

22  749, 751 (9th Cir. 2003). All material allegations in a complaint must be taken as true

23  _____

24      [2]Copies of the complaint, Ordinance No. 175722 and Ordinance No. 179268

25  which amended the CG rates on October 2, 2007, and excerpts of the Los Angeles City

26  Charter  are attached to the Defendant's Request for Judicial Notice ("RJN") which has
    been filed with the court under separate cover. *See* RJN Exhibits 1, 2 and 3.

27  _____

28

and viewed in the light most favorable to the plaintiff. *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1133 n.1 (9th Cir. 2001).   The court need not accept as true, however, allegations that contradict facts that may be judicially noticed by the court, *see Mullis v. United States Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987), and may consider documents that are referred to in the complaint whose authenticity no party questions, *see Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994). Thus, a motion for judgment on the pleadings should be granted where it appears the moving party is entitled to judgment as a matter of law. *Fajardo v. County of L.A.*, 179 F.3d 698, 699 (9th Cir. 1999).

The function of a motion to dismiss under Rule 12(b)(1) is to determine whether the court has subject matter jurisdiction over the claims set forth in the pleadings. Plaintiff bears the burden of establishing subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed. 2d 391, 395 (1994) ("It is to be presumed that a cause lies outside this [limited federal court] jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." (internal citations omitted).)

Civil rights suits against government entities are held to the same pleading standard as that required for all federal claims. *Leatherman v. Tarrant County Narcotics Unit*, 507 U.S. 163, 113 S. Ct. 1160, 122 L. Ed.2d 517 (1993). In deciding to dismiss a claim under Rule 12(b) (6), a court may look beyond the complaint to matters of public

record. *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995.)  Under the Federal Rules

of Evidence, Rule 201(f), judicial notice may be taken at any stage of the proceeding.

Therefore, on a motion to dismiss a court may properly look beyond the complaint to

matters of public record and doing so does not convert a Rule 12(b) motion to one for

summary judgment. *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282

(9th Cir. 1986).

## I.

## THE COURT LACKS SUBJECT MATTER JURISDICTION

### A.  District Courts Have Limited Jurisdiction to Enforce PURPA

District courts have limited jurisdiction over a party's claims to enforce the

requirements of rules promulgated by FERC under PURPA. *Massachusetts Institute of

Technology v. Massachusetts Dept. of Public Utilities,* 941 F. Supp. 233, 237 (D.

Mass.1996) (*MIT*). Specifically, courts have marked a distinction between claims

challenging the implementation of nonregulated utility regulations and claims

challenging the application of such regulations. An implementation claim involves a

contention that the nonregulated utility has failed to implement a lawful implementation

plan under §824a-3(f) of the PURPA. An as applied claim, in contrast, involves a

contention that the nonregulated utility's implementation plan is unlawful, as it applies

to or affects an individual petitioner. *MIT* at 237.

PURPA contains a detailed enforcement scheme and provisions for judicial review of these potential claims.  See 16 U.S.C. § 824a-3(g)-(h).  PURPA § 210(h)(2) provides authority for a QF to bring action against a nonregulated electric utility in federal district court.  See 16 U.S.C. § 824a-3(h).  However, § 210(h)(2) limits federal court jurisdiction to "implementation" claims that nonregulated utilities have failed to comply with their obligation under § 210(f)(2) to devise an implementation plan, after notice and opportunity for public hearing that is consistent with the FERC regulations.  Accordingly, § 210(g) provides state court jurisdiction for any subsequent claim that a nonregulated utility has failed to adhere to its own implementation plan in its dealings with a particular QF as an "as-applied" claim.  16 U.S.C. § 824a-3(g)(2) (incorporating 16 U.S.C. §2633 by reference).

**B. Implementation of PURPA in Los Angeles**

A state's obligation under § 210(f) of PURPA to implement may be fulfilled either: 1) through the enactment of laws or regulation at the state level; 2) by application on a case-by-case basis by the state regulatory authority of the rules adopted by the FERC; and 3) by any other action reasonably designed to implement the FERC's rules.

As discussed more thoroughly below, the Los Angeles City Council approves by ordinance the utility rates set by the Los Angeles Board of Water and Power Commissioners. CoP concedes that in "implementing PURPA, the City Council previously adopted policies and regulations to encourage cogeneration." (Complaint ¶

21.)

## C.  CoP's "As- Applied" Claim Must be Brought in State Court

In *MIT, supra,* the plaintiff cogeneration facility alleged that tariffs imposed on

them violated PURPA and brought an action in federal district court under §210(h) of

PURPA. 16 U.S.C. § 824a-3(h).  However, as noted above, the court concluded that

federal court jurisdiction under §210(h) is available only to compel a non-regulated

electric utility to adopt regulations implementing FERC's §210(f) rules.  But, as here,

this was not the gravamen of *MIT's* complaint.  Rather, the court characterized the claim

as an "as-applied" claim because plaintiffs contended that the defendant's tariffs, as they

applied to them, violated PURPA, not that the defendants failed to create an

implementation plan.  This ruling was based solely on *MIT's* complaint and

notwithstanding insistence that the action was for damages for violation of PURPA.

Consequently, plaintiff's "as-applied" action was found to lie only in state court.

Similarly, CoP is attempting to invoke federal jurisdiction under §210(h) of PURPA.

CoP claims that LADWP's cogeneration rate schedules violate PURPA as applied to

them and claim damages.  Accordingly, their action lies only in state court.

In *Greensboro Lumber Co. Georgia Power Co.*, 643 F. Supp. 1345, 1372 (N.D.

Ga. 1986), *aff'd*, 844 F.2d 1538 (11th Cir. 1988), the QF plaintiff challenged the

defendants' implementation plan, claiming that the rates established by the plan were not

"non-discriminatory, just and reasonable" as required by 18 C.F.R. § 292.305.  The

district court concluded that this claim was properly regarded as a challenge to the application of an implemented plan, and not a challenge to the implementation of the plan itself; therefore the court concluded jurisdiction did not lie in federal court. *Greensboro Lumber Co.*, 643 F.Supp. at 1374-1375.  The court held that § 210(g) divested it of jurisdiction over a QF's "as applied" claim that a nonregulated utility failed to adhere to its own implementation plan in its dealings with the QF. *Greensboro Lumber Co.*, 643 F. Supp. at 1374.

In *MIT* the district court, following the reasoning of the court in *Greensboro Lumber Co.*, *supra,* ruled that it had no jurisdiction to hear a complaint brought by a QF concerning stranded-cost recovery charges proposed by an electric utility rate and approved by the Massachusetts Department of Public Utilities.  In sum, the federal court explained that it had jurisdiction to force a state to implement QF regulations under PURPA if the state regulatory authority has failed to do so, but not to settle disputes about how a state-approved rate or regulation might apply to an individual QF. *Id.* at 237.

CoP, like the plaintiffs in *Greensboro* and *MIT*, asks the court to declare specific rate schedules in violation of 18 C.F.R. §292.305. (Complaint ¶ 35, Prayer ¶ 1.) CoP's complaint pleads that The Los Angeles City Council, as the regulatory authority with an obligation to implement PURPA, has an obligation to adopt rules and regulations that encourage cogeneration. FERC regulations allow nonregulated utilities a wide degree of

DEFENDANT DEPARTMENT OF WATER & POWER, CITY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

latitude in establishing an implementation plan to accommodate local conditions and concerns, so long as the final plan is consistent with statutory requirements, and LADWP has satisfied this responsibility. (*Cf.* Complaint ¶ 21.)

In paragraph 21 of the complaint, CoP alleges: " [i]n implementing PURPA, the [Los Angeles] City Council previously adopted policies and regulations to encourage cogeneration." Thus, CoP concedes that LADWP's implementation plan met PURPA requirements. It is apparently only a subsequent increase of the cogeneration rates which has prompted this suit, not an alleged failure to implement PURPA in the first instance.[3]

CoP's complaint alleges "the new schedules serve to discourage, rather than encourage, the development of cogeneration" but that allegation cannot imbue this court with subject matter jurisdiction if, as CoP concedes, LADWP has already implemented PURPA and all they are haggling over is the price of energy. Wisely, Congress has reserved to state courts the issue of whether the City's rates are fair and reasonable after PURPA has been initially implemented. See 18 C.F.R. § 210(g).

CoP seeks to have the City's 2005 CG-2 and CG-3 rate schedules declared invalid and claims damages.  This claim is a challenge to the application of an implemented plan, not a challenge to the implementation of PURPA itself. Under

---

[3]"These new schedules replaced the existing schedules under which Plaintiff CoP took standby service." (Complaint ¶ 6 *cf.* RJN Exhibits 2,3.)

DEFENDANT DEPARTMENT OF WATER & POWER, CITY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF  MOTION TO DISMISS

*Greensboro* and *MIT, supra,* the district court lacks jurisdiction to adjudicate this "as applied" claim which can only be brought in state court.

## II.

## THE COMPLAINT FAILS TO ESTABLISH A MONELL CLAIM OR OTHER BASIS FOR MUNICIPAL LIABILITY

### A. The Complaint fails to Allege Facts Sufficient to Establish an Unconstitutional Municipal Policy

In CoP's fourth claim for relief it is alleged that adoption of the City's CG rate schedules denied LADWP's "customers due process of law and must be declared invalid." (Complaint ¶ 35.) While CoP does not directly invoke federal jurisdiction under 42 U.S.C. § 1983, such is the only mechanism available to sue under the Constitution's Due Process Clause in federal court. Section 1983 liability of either a municipality or a municipal employee sued in his official capacity may not be predicated upon a *respondeat superior* theory, but must be founded upon the existence of a municipal policy, adherence to which violates a federal statute or constitutional provision. *Monell v. Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 915, 56 L.Ed.2d 611 (1978). It is not necessary that such policy or custom has been formally approved or adopted through the municipality's official decision-making channels. 436 U.S. 690-691. However, the identification of officials having "final policy making authority" is a question of state (including local) law rather than a question of fact for a jury. *City of St. Louis v.*

*Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed. 2d 107 (1988). An official policy or custom may not be proven through reference to a single unconstitutional activity. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 813, 105 S.Ct. 2427, 85 L.Ed. 2d 791 (1985).

Under the Los Angeles City Charter, utility rates are set by the Board of Water and Power Commissioners subject to approval by ordinance enacted by the City Council. See Los Angeles City Charter § 676. (RJN Exhibit 5.) Under California's Open Meetings Law (Cal. Govt. Code § 54950 et seq.,) all such matters must be placed on public agenda and voted upon in public session. It is presumed that official duty has been regularly performed. (Cal. Evidence Code § 664; Fed. Rules of Evid., Rule 302.) CoP does not allege that the City failed to perform the duties imposed by law for the creation or amendment of municipal ordinances. Indeed, in paragraph six of the Complaint CoP describes in detail the legislative process beginning in 2003 which led to the 2005 enactment of the CG-2 and CG-3 rates in Ordinance 175722. The existence of an unconstitutional municipal "custom, policy, or  usage" in the City's modification of its municipal rate ordinance cannot be established through exercise of the legislative process, notwithstanding CoP's claim that the City "provided no opportunity for customer participation in the consideration of the changes to the rate schedules." (*Cf.* Complaint ¶ 34.) Presumptively, CoP had the same opportunity to participate in the rate-making process as any other member of the public had under California's Open Meeting Law. Nothing more is required under federal law.

**B. CoP's Request that the Court Substitute its Discretion for That of Lawmakers Must be Rejected**

That CoP does not like the City's cogeneration rates is manifest. However, it is not for this court to substitute CoP's opinion as to what the law should be in place of a law duly enacted either by the California Legislature or the Los Angeles City Council. The rationale for judicial restraint in just such a situation as this was well articulated many years ago by Justice Holmes in *Bi-Metallic Co. v. Colorado* (1915) 239 U.S. 441, 60 L.Ed. 372, 36 S.Ct. 141:

> "Where a rule of conduct applies to more than a few people it is impracticable that every one should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule." (Cited with approval in *Horn v. County of Ventura* (1979) 24 Cal. 3d 605, 613.)

If CoP does not like any of the California Open Meeting Law's provisions for public notice and an opportunity to be heard prior to the enactment of municipal

ordinances, it is free to petition the California Legislature to amend or repeal that law. But this court may not rewrite the California Government Code to extend its invalidation provisions beyond those established by the California Legislature.[4] Clearly, the separation of powers doctrine would prohibit such legal adventurism by this court. <u>See</u> generally *United States v. Morgan* 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941) (constitutional doctrine of separation of powers precludes judicial inquiry into the motivation or mental process which may underlie action by a nonjudicial agency of government).

## C. The Denial of Due Process Claim Does Not Invoke Federal Jurisdiction Over Supplemental State Claims

CoP's attempt to invoke federal jurisdiction under a "denial of due process" claim and attach its remaining state claim under supplemental jurisdiction must fail. As discussed above, CoP's fourth claim of denial of due process is vague at best and does not specifically plead a constitutional claim invoking federal jurisdiction. Courts have found that if state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals. *Picard v. Bay Area Regional Transit District*, 823 F. Supp. 1519, 1527 (N.D. Cal.1993). CoP's third claim for relief invokes state law exclusively. This state claim should be argued in state court because there is no cognizable basis for federal jurisdiction under either federal statute or constitutional law.

---

[4]Aside from the criminal sanctions which may be imposed upon legislators for violation of California's Open Meeting Law, certain acts (not alleged here) may also be set aside by a reviewing court if a Government Code violation is found. *See e.g.* Cal. Govt. Code §§ 54953, 54954.2, 54954.5, 54954.6, 54956 and 54959.

14

In addition, even if the court recognizes a due process claim to be adequate to invoke federal jurisdiction, pendent jurisdiction does not exist if a federal claim is insubstantial in that it is absolutely devoid of merit or obviously frivolous. *Picard v. Bay Area Regional Transit District*, *supra.* As discussed above, CoP's claimed lack of notice and denial of due process is devoid of merit and frivolous. Absent an allegation that California's Open Meeting law was not followed in the City's enactment of Ordinance No.175722, CoP's claimed due process deprivation is wholly without merit.

The gravamen of this case turns on the question of whether the City's cogeneration rates applicable to CoP's refinery are fair and reasonable. As such, this is not a PURPA "implementation" case. PURPA was satisfied when "the City Council previously adopted policies and regulations to encourage cogeneration." (Complaint ¶ 21.) Nor is this a constitutional law case. Rather, a fair reading of the facts alleged here present an "as applied" challenge to a municipal rate ordinance which may be tested solely in state court.

### III

### THE POWER TO SET RATES IS A MUNICIPAL AFFAIR

### A.  Municipal Rates are Subject to Limited Judicial Review

The power of the City to fix rates charged for electric service is incidental to the power to "establish and operate" public utility systems conferred by Article XI, §9 of the California Constitution. *Durant v. City of Beverly Hills* (1940) 39 Cal. App. 2d 135, 137. The electric rates set by the City Council in the exercise of its police power are presumptively reasonable, fair and lawful. *Id*. at 139.  In administering a utility, even within its own limits "a city acts in a proprietary and only *quasi*-public capacity." *County*

1   *of Inyo v. Public Utilities Com.* (1980) 26 Cal. 3d 154, 163 n. 7, citing *South Pasadena v.*

2   *Pasadena Land, etc. Co.* (1908) 152 Cal. 579, 593. As a customer of the City, CoP is

3   entitled to receive electrical service at a fair  rate. *County of Inyo v. Public Utilities*

4   *Com., supra,* at p. 159. Generally, in making rates for a public utility it is required that

5   there be a uniformity of treatment of consumers similarly situated.  However, this

6   requirement does not forbid reasonable differences in rates for application to consumers

7   not similarly situated. 40 A.L.R. 2d 1331, 1332. Thus, for example, courts have

8   consistently upheld the validity of preferential rates for elderly and low-income persons.

9   29 A.L.R. 4th 615, 616-18; see also Pub. Util. Code §385 (mandatory nonbypassable

10  charges for low-income programs.) The courts have also approved variations in utility

11  rates based on quantities consumed as aiding the State's conservation goals. *Brydon v.*

12  *East Bay Municipal Utility District* (1994) 24 Cal. App. 4th 178, (approval of inclined

13  block rates for larger consumers.)

14          For these reasons, CoP's comparison of its cogeneration rates with those

15  applicable to an industrial customer (Complaint ¶ 8) is without relevance. CoP does not

16  allege that its load factors, coincident peak energy demands or required infrastructure are

17  the same as those of a commercial customer without on-site generation. CoP

18  acknowledges that LADWP's power system must be available to serve any time CoP's

19  cogeneration facility goes down as "planned for maintenance or servicing, or

20  unplanned." (Complaint ¶ 4.) Needless to say, the costs of providing electric service

21  under such circumstances can be significant at CoP's Los Angeles Refinery. (Complaint

22  ¶ 3.)

23          The case of *Durant v. City of Beverly Hills,* supra, supports the conclusion that

24  rate-fixing is legislative in character and that judicial inquiry in a rate challenge is

25  limited to whether the rate is "unreasonable and unfair." *Id.* at pp.138-40. There an

26

27                                                    16

28

out-of-city customer complained he was charged four cents more per hundred cubic feet of water than were customers in the city. The Court of Appeal found that while those in like circumstances must be treated similarly, a city may make separate rates for each class or group of customers and still meet the test of reasonableness. There was no showing of unreasonableness in the rate differential and the challenge to the out-of-city rate was rejected. In the later case of *County of Inyo v. Public Utilities Com.* (1980) 26 Cal. 3d 154, 166 n.12, the Supreme Court held that while the California Legislature could by legislation make Los Angeles subject to the California Public Utilities Commission in its rate-setting function, it had chosen not to do so. The High Court found that "[w]hile judicial review can protect consumers against plainly unfair rates, that remedy does not offer opportunity for detailed analysis and careful structuring of rates possible in a PUC proceeding. *Id.* at 160.

There is nothing in the complaint before this court to support the conclusion that CoP is treated any differently under the cogeneration rate structure than any other cogeneration customer similarly situated. Nor is there anything contained in the pleading to suggest that the rates charged CoP result in anything other than a reasonable rate of return for the LADWP.

**B.  The City is Entitled to a Reasonable Rate of Return From its Utility**

In *Bluefield Water Works Co. v. Public Service Commission*, 262 U.S. 679, 692-93, 43 S.Ct. 675, 67 L.Ed. 1176 (1923) the Supreme Court declared that a public utility is entitled to set rates so as to ensure a fair rate of return:

> "A public utility is entitled to such rates as will permit it to earn a return on the value of the property which it employs for the convenience of the public equal to that generally being made at the same time and in the same general part of the country on investments in other business undertakings which are attended by corresponding risks and uncertainties; but it has no constitutional right to profits such as are realized or anticipated in highly profitable enterprises or speculative ventures. The return should be reasonably sufficient to assure confidence in the financial soundness of the utility and should be adequate, under efficient and economical management, to maintain and support its credit and enable it to raise the money necessary for the proper discharge of its public duties." (cited with approval in *Los Angeles Gas & Elec. Corp. v. RR Comm'n of California*, 289 U.S. 287, 320 (1933)).

The City is not required by law to set a lower electric rate for CoP absent an allegation or showing that the rate results in an unreasonable rate of return. CoP make no such allegation here. Indeed, to the extent that CoP seeks to obtain a preference in the rate making process over other cogeneration ratepayers, the California Legislature has forbidden public utilities from granting any preference in rates. "No public utility shall, as to rates, charges, service, facilities, or in any other respect, make or grant any preference or advantage to any corporation or person...." See Cal. Pub. Utilil. Code § 453 subd. (a). Public utilities are further required by law to charge for commodities at the "rates, tolls, rentals, and charges applicable thereto as specified in its schedules on file

and in effect at the time...." Cal. Pub. Util. Code § 532. Yet CoP seeks precisely the opposite result here.

Under the Filed Rate Doctrine, CoP is obligated to pay the rates prescribed by the City's duly enacted rate ordinance. There is no allegation that CoP is not billed pursuant to the rate ordinance; nor is there an allegation that other cogeneration customers are billed at a different rate than that prescribed by law. (*Cf.* Complaint ¶ 6.)

## IV.

## PLAINTIFFS' SUPPLEMENTAL STATE CLAIMS ARE TIME-BARRED

### A.    Plaintiffs' State Claim Seeks to Invalidate the City's Electric Rate Ordinance

California's courts have ruled that the statute of limitations for a cause of action is determined by identifying the nature of the action and not the form of the action nor the relief demanded.   The Second District in *Embarcadero Municipal Improvement District v. County of Santa Barbara et al.* (2001) 88 Cal. App. 4th 781 stated:

> "Whether a statute of limitations applies ordinarily is a question of law. (*People ex rel. Dept. of Conservation v. Triplett* (1996) 48 Cal. App. 4th 233, 246.) The gravamen of a complaint and the nature of the right sued upon, rather than the form of the action or relief demanded, determine which statute of limitations applies. (*Hensler v. City of Glendale* (1994) 8 Cal. 4th 1, 22-23; see also *Hills for Everyone v. Local Agency Formation Com.* (1980) 105 Cal. App. 3d 461, 468 ["it is the nature of the governmental action being challenged rather than the basis for the challenge that determines the procedure to be utilized"].)" Id. at 789. (emphasis added, internal citations omitted.)

1   Furthermore, in *Graydon v. Pasadena Redevelopment Agency* (1980) 104 Cal.

2   App. 3d 631, 645 ("*Graydon*"), the Second District in ruling that plaintiff's writ of

3   

4   mandate was governed by Cal. Code Civ. Proc. §863 held that the negotiation process is

5   an "integral part" of the whole method of financing of public costs associated with the

6   local agency's action.[5]  *See* also *Bernardi v. City Council* (1997) 54 Cal. App. 4th 426,

7   

8   438  (court held action barred by statute of limitations where challenges brought against

9   matters that were "part and parcel of" and "inextricably intertwined with" and "integral

10  parts of" the validated judgment.)

11  CoP's complaint challenges the validity of Los Angeles City Ordinance No.

12  175722.  (RJN Exhibit 2.)  Under California Government Code ("Gov. Code") §53511 a

13  

14  local agency may bring an action to determine the validity of its bonds, warrants,

15  contracts, obligations or evidences of indebtedness pursuant to Chapter 9 (commencing

16  with Section 860) of Title 10 of Part 2 of the Code of Civil Procedure (Cal. Code Civ.

17  

18  Proc. §§ 860- 870.5).[6]  The term "local agency" is defined as a county, city, city and

19  county, public district or any public or municipal corporation, public agency or public

20  

_____

21      [5] In the *Graydon* case plaintiff sought a writ of mandate to challenge the
22  negotiation process leading up to the approval of a contract between a redevelopment
     agency and a developer.

23

24      [6] Cal. Civ. Proc. §863 specifically provides that " [if] no proceedings have been
     brought by the public agency pursuant to this chapter, any interested person may bring
25  an action within in the time and in the court specified in Section 860 to determine the
     validity of such matter."  Such validation actions must be brought within 60 days or be
26  time-barred.  *See* Code Civ. Proc. §§863 and 869.

27                                          20

authority.  (Gov. Code § 53510.)    The City and its LADWP are a "local agency" within the meaning of Gov. Code §53511.

Similar to *Graydon*, *supra*, CoP's complaint attacks the validity of the Electric Rate Ordinance which is "part and parcel of" and "inextricably intertwined with" the whole method of financing LADWP's Power System infrastructure.  Los Angeles City Charter §§679(c)(9) and LADWP's Power System bond financing contracts establish the terms and conditions by which LADWP can transfer "surplus" money to the City's Reserve Fund (an "integral part" of the City's method of bond financing). (RJN Exhibits 4, 6.)  Furthermore,  revenues generated from the Electric Rate Ordinance are contractually pledged as the source of payment for all LADWP Power System Revenue Bonds as an integral part of the whole method of financing the Power System's debt. Moreover, the transfer of "surplus" money from the City's Power Revenue Fund to the Reserve Fund is also inextricably intertwined with the City's annual budget and financial ability to operate necessary government services.  See *Hansen et al. v. City of San Buenaventura* (1986) 42 Cal. 3d 1172.[7]

---

[7] The California Supreme Court ruled that  municipal utilities  may recover a return on  investment in a utility through rates charged. *Id.* at 1182. "California cases indicate that utility rates need not be based purely on costs.  In *Golden Gate Bridge etc. Dist. v. Luehring* (1970) 4 Cal.App.3d 204, the court stated that 'the [California] Constitution does not inhibit an entity of local government from collecting fees for services it performs and using the *net proceeds* of enterprises such as municipal utility systems for the benefit of its own general fund.'" *Id* at 1183.

Although presented as tort causes of action, the question of the validity of the Electric Rate Ordinance remains paramount here. As such, CoP's state claims are governed by of Gov. Code § 53511 and must be brought as a "validation action."

**B.     The Statute Of Limitations For All State Causes of Action Is 60 Days**

Recognizing the Legislature's policy that challenges to governmental financial decisions must be expeditiously resolved, the Second District in *Friedland v. City of Long Beach* (1998) 62 Cal.App.4th 835[8] ("*Friedland*") stated :

> "A validation action implements important policy considerations. [A] central theme in the validating procedures is speedy determination of the validity of the public agency's action. The text of section 870 and cases which have interpreted the validation statutes have placed great importance on the need for a single dispositive final judgment. The validating statutes should be construed so as to uphold their purpose, i.e., the acting agency's need to settle promptly all questions about the validity of its action.
> . . .
>
> A key objective of a validation action is to limit the extent to which delay due to litigation may impair a public agency's ability to operate financially. A validation action fulfills a second important objective, which is to facilitate a public agency's financial transactions with third parties by quickly affirming their legality. The fact that litigation may be pending or forthcoming drastically affects the marketability of public bonds[.] . . . [T]he possibility of future litigation is very likely to have a chilling effect upon potential third party lenders, thus resulting in higher interest rates or even the total denial of credit, which may impair a public agency's ability to fulfill its responsibilities." *Id.* at 842 - 843 (internal citations and punctuation omitted.)

---

[8]Plaintiffs challenged the resolutions of defendant public agencies which incurred financial obligations and authorized related debt instruments to build the Long Beach Aquarium.

DEFENDANT DEPARTMENT OF WATER & POWER, CITY OF LOS ANGELES' MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

As in *Graydon* and *Friedland*, the complaint here seeks to invalidate the City's (including LADWP's) financial decisions which enacted the CG Rate Ordinance. CoP's complaint directly strikes at the heart of both the City's and LADWP's financial integrity and operational stability.   Since the Electric Rate Ordinance became effective January 1, 2005 (Complaint ¶6), plaintiffs' state claims filed on September 4, 2007 are time-barred by the 60 day statute of limitations. *See* Cal. Code Civ. Proc. §§ 860, 863 and 869.

## CONCLUSION

Based on the foregoing and under the authorities cited herein, the City's motion to dismiss should be granted, without leave to amend. Plaintiff CoP remains free to seek whatever relief is available in state court for its "as applied" PURPA challenge to the City's duly enacted rate ordinance.

Dated: January 10, 2008                    Respectfully submitted,

                    ROCKARD J. DELGADILLO, City Attorney
                    RICHARD M. BROWN, General Counsel
                    Water and Power

                    By: _____
                        WENDY K. GENZ
                        Deputy City Attorney

                    Attorneys for Defendant Department
                    of Water & Power, Los Angeles

# PROOF OF SERVICE

I am employed in the County of Los Angeles; I am over the age of eighteen years and am not a party to the within entitled action; my business address is 111 North Hope Street, Suite 340, Los Angeles, California 90012-2694. On January 10, 2008, I served the within documents:

## DEFENDANT DEPARTMENT OF WATER & POWER, CITY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

☐     by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date.

☒     by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☐     by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

Michael Alcantar, Esq.            G. Emmett Raitt, Jr., Esq.
Donald Brookhyser, Esq.        Raitt & Associates,
Alcantar & Kahl, LLP            4199 Campus Drive, Ste. 700
120 Montgomery Street, Ste. 2200   Irvine, CA 92612-4698
San Francisco, CA 94104

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on January 10, 2008, at Los Angeles, California.

*Patricia O. Jacot*

Patricia A. Jacobson

DEFENDANT DEPARTMENT OF WATER & POWER, CITY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS