
O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONOCOPHILLIPS COMPANY,<br><br>             Plaintiff,<br><br>     v.<br><br>DEPARTMENT OF WATER AND POWER,<br>CITY OF LOS ANGELES,<br><br>             Defendant. | CV 07-5742 ABC (JTLx)<br><br>ORDER RE: MOTION TO DISMISS |

    Pending before the Court is Defendant City of Los Angeles Department of Water and Power's ("City" or "LADWP") Motion To Dismiss ("Motion").  Plaintiff ConocoPhillips Company ("Plaintiff") filed a timely Opposition, and Defendant filed a timely Reply. The Court found this motion appropriate for determination without oral argument and took it under submission.  See Fed. R. Civ. Pro. 78; Local Rule 7-15. Upon consideration of the materials submitted by the parties and the case file, the Court **GRANTS** in part and **DENIES** in part the Motion.

//

//

## I. BACKGROUND

Plaintiff ConocoPhillips owns and operates a refinery in Los Angeles. City's Department of Water and Power ("LADWP") operates a public utility providing electric power to retail end-use customers within the City of Los Angeles. Plaintiff operates an electric generator at its refinery that supplies a portion of the refinery's electric load. Plaintiff purchases "standby service" from LADWP when its on-site generator is out of service.

Plaintiff's generator has been certified as a "cogeneration qualifying facility" ("QF") under the Public Utility Regulatory Policies Act of 1978 (PURPA), 16 USC § 824a-3. On December 16, 2003, LADWP adopted revisions to its rate schedule governing the provision of standby service to standby customers, including Plaintiff, by enacting two new rate schedules, CG-2 and CG-3.

On September 4, 2007, Plaintiff filed the Complaint in this action, asserting five causes of action faulting LADWP's adoption of the new rate schedules. LADWP now moves to dismiss the complaint on a number of grounds, including for lack of subject matter jurisdiction, failure to state a claim, and as barred by the statute of limitations. Plaintiff opposes.

## II. LEGAL STANDARD

**A.   Motion to Dismiss for Lack of Subject Matter Jurisdiction**

A motion to dismiss pursuant to Rule 12(b)(1) raises the question of a federal court's subject matter jurisdiction. See Fed. R. Civ. Pro. 12(b)(1). A Rule 12(b)(1) motion may attack either the allegations of a complaint as insufficient to confer upon the court subject matter jurisdiction (a "facial" challenge), or may attack the existence of subject matter jurisdiction in fact (a "speaking"

2

1 motion).  See Thornhill Publishing Co., Inc. v. General Telephone &
2 Electronics Corp., 594 F.2d 730, 733 (9th Cir. 1979); see also
3 Trentacosta v. Frontier Pacific Aircraft Industries, Inc., 813 F.2d
4 1553, 1558 (9th Cir. 1987) (discussing the differing evidentiary
5 standards).
6     For a facial challenge, all allegations of material fact are
7 taken as true and construed in the light most favorable to a nonmoving
8 party.  When the motion to dismiss is a factual attack on subject
9 matter jurisdiction, however, no presumptive truthfulness attaches to
10 the allegations in the complaint, and the existence of disputed
11 material facts will not preclude the trial court from evaluating for
12 itself the existence of subject matter jurisdiction in fact.  See
13 Thornhill, 594 F.2d at 733; Trentacosta, 813 F.2d at 1558 (so long as
14 the jurisdictional issue is "separable," court may resolve disputed
15 issues of fact on motion).
16     The burden of proof on a Rule 12(b)(1) motion is on the party
17 asserting jurisdiction (e.g., the plaintiff, or the defendant in a
18 case that has been removed to federal court).  See Sopcak v. Northern
19 Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir. 1995).  A court
20 presumes lack of jurisdiction until shown otherwise.  See Kokkonen v.
21 Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994).
22 **B.   Motion to Dismiss for Failure to State a Claim**
23     A Rule 12(b)(6) motion tests the legal sufficiency of the claims
24 asserted in a complaint. See Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6)
25 must be read in conjunction with Rule 8(a), which requires a "short
26 and plain statement of the claim showing that the pleader is entitled
27 to relief."  5A Charles A. Wright & Arthur R. Miller, Federal Practice
28 and Procedure § 1356 (1990).  "The Rule 8 standard contains 'a

powerful presumption against rejecting pleadings for failure to state a claim.'" Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997). A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 969, 699 (9th Cir. 1988). To survive a 12(b)(6) motion, a complaint "does not need detailed factual allegations," but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic v. Twombly, 127 S.Ct. 1955, 1964-1965, 1968-1969 (2007) ("retir[ing]" the "no set of facts" language of Conley v. Gibson, 355 U.S. 41 (1957)).

In resolving a motion to dismiss, the Court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to plaintiff. Id. However, the Court need not accept as true any unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

In ruling on a 12(b)(6) motion, a court generally cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). A court may, however, consider exhibits submitted with the complaint. Id. at 453-54. Similarly, a court may consider documents that are not physically attached to the complaint but "whose contents are alleged in [the] complaint and whose authenticity no party questions." Id. at 454.

### III.  DISCUSSION

**A.   The Court has Subject Matter Jurisdiction Over Plaintiff's PURPA Claims.**

Plaintiff's first and second claims for relief arise under PURPA. Specifically, Plaintiff's first claim contends that LADWP's new rates, CG-2 and CG-3, violate 18 C.F.R. § 292.305, one of the Federal Energy Regulatory Commission's ("FERC") regulations implementing PURPA. Under section 292.305, a utility's sale of standby power to a qualifying facility "(i) Shall be just and reasonable and in the public interest; and (ii) Shall not discriminate against any qualifying utility in comparison to rates for sales to other customers served by the electric utility."  (Compl. § 15.)  Plaintiff alleges that the rates imposed by CG-2 and CG-3 are unjust, unreasonable, not in the public interest, and discriminatory against QFs. (Compl. ¶ 16.)

Plaintiff's second claim for relief contends that under PURPA, LADWP has an obligation to adopt rules and regulations that encourage cogeneration (16 U.S.C. § 824a-3(a)), and alleges that "the discriminatory effect and significantly increased charges of the new schedules serve to discourage, rather than encourage, the development of cogeneration, as required by PURPA."  (Compl. ¶¶ 20-22.)

LADWP contends that the federal courts lack subject matter jurisdiction over the types of claims Plaintiff is asserting under PURPA.  In brief, under section 824a-3 of PURPA, FERC is required to establish rules governing the terms by which electric utilities are required to sell electric energy to, and buy electric energy from, qualifying facilities.  In furtherance of this mandate, FERC has issued 18 C.F.R. § 292.305, cited above, setting out a standard governing the sale price of electricity to QFs.  Federal jurisdiction

over claims arising under PURPA is governed by the Federal Power Act § 210(h), 16 U.S.C. § 824a-3(h). Section 210 sets up an elaborate enforcement scheme in which the roles of the FERC, the state regulatory authorities, nonregulated electric utilities (such as LADWP), and the federal courts are specifically delineated. As it pertains to this case, under section 210(h), a complainant must petition FERC for relief before filing a court action. However, FERC has enforcement jurisdiction over only certain types of PURPA claims, that is, only over claims alleging that a state regulatory authority or nonregulated electric utility has failed to "implement" FERC's PURPA regulations. By contrast, FERC does not have jurisdiction over so-called "as-applied" claims. Under section 210(h), a federal court's jurisdiction over PURPA claims is coextensive with FERC's authority to initiate an enforcement action, that is, federal court jurisdiction lies over "implementation" claims, but not over "as-applied" claims.

The distinction between implementation claims and as-applied claims is defined by the caselaw. An implementation claim involves a contention that the state agency has failed to implement a lawful implementation plan under § 210(f) of PURPA. An as-applied claim, by contrast, involves a contention that the agency's implementation plan is unlawful as it applies to or affects an individual petitioner. See Greensboro Lumber Co. v. Georgia Power Co., 643 F.Supp. 1345, 1374 (N.D. Ga.1986), aff'd. 844 F.2d 1538 (11th Cir. 1988).

Upon review of the case law, the Court finds that Plaintiff's PURPA claims are implementation claims. Plaintiff is challenging two rate schedules for the sale of electricity as contrary to the rate standards set by FERC in 18 CFR § 292.305. Although neither party has

6

directed the Court to cases about rates for a utility's *sale* of electricity *to* cogeneration customers, they cite cases about rates for a utility's *purchase* of electricity *from* cogeneration customers. However, having reviewed the structure and purpose of the relevant provisions of PURPA and the FERC regulations, the Court sees no distinction, for jurisdictional purposes, between challenges to rates for the sale of electricity and challenges to rates for the purchase of electricity. In <u>Connecticut Valley Elec. Co., Inc. v. F.E.R.C.</u>, 208 F.3d 1037 (C.A. D.C. 2000), the Court noted that FERC's regulations require utilities to purchase a QF's output at the utility's "avoided cost." <u>Id.</u> 208 F.3d at 1040. The plaintiff, a utility, challenged the state commission's purchase rate as being more than the utility's avoided cost and therefore in violation of PURPA. The Court determined that "the failure of a state commission to ensure that a rate does not exceed the utility's avoided cost is a failure to comply with a [FERC] regulation implementing the PURPA . . . which would ordinarily be challenged through an enforcement action brought in district court under § 210(h)." <u>Id.</u> at 1043. Here, although Plaintiff's claims challenge LADWP's rates for the *sale* of electricity to cogeneration customers, these claims assert, as did those in <u>Connecticut Valley</u>, that the rate does not comply with a FERC rate regulation implementing PURPA. As such, Plaintiff's claims are of the same nature as the claims in <u>Connecticut Valley</u> and, likewise, are implementation claims properly asserted in federal court.

Second, Plaintiff challenges the rate schedules that apparently govern rates assigned to whole classes of cogeneration customers, not just how those rates happen to affect Plaintiff's particular operation. As such, this case is distinguishable from <u>Massachusetts</u>

Institute of Technology v. Massachusetts Dept. of Public Utilities, 941 F.Supp. 233, 237 (D.Mass. 1996).  There, the challenged charge was assessed against a class of customers defined as "all large customers in the load at risk class. . . whether QF or not."  MIT, 941 F. Supp. At 237.  The plaintiff, a QF, was the only QF customer in the class of customers and challenged the assessed charge on the ground that it discriminated against the plaintiff precisely because plaintiff was a QF.  As such, the Court concluded that "the claim [was] that the [charge], as applied to MIT, violates PURPA," and found that the claim was an as-applied claim.  Here, by contrast, Plaintiff's claims are that the rate schedules discriminate against and are unreasonable as to all cogeneration customers, not just as to Plaintiff itself.

    Finally, although neither party brought it to the Court's attention, FERC's Notice of Intent Not to Act in this case, issued on March 28, 2005, supports the view that Plaintiff's claims are implementation claims, not as-applied claims.  See 110 FERC ¶ 61,368. Therein, after describing the contentions of Plaintiff's petition, FERC characterized it as "fundamentally a challenge to LADWP's implementation of the Commission's PURPA regulations."  Id. at 62,447. FERC also stated that "Petitioners have alleged facts that, if true, indicate LADWP's implementation of PURPA is inconsistent with our regulations, and may constitute an abuse of its role as a 'nonregulated utility.'"  Id.  Thus, FERC clearly characterized Plaintiff's claim as an implementation claim.  Indeed, were Plaintiff's claims as-applied claims, FERC would not have had jurisdiction to pursue an enforcement action and likely would have denied the petition on that ground.  Instead, FERC apparently considered the matter within its jurisdiction, but, for reasons not

relevant to this motion, declined to exercise its wholly discretionary authority to undertake an enforcement action.

For the foregoing reasons, the Court finds that Plaintiff's PURPA claims are implementation claims. The Court therefore has subject matter jurisdiction over Plaintiff's first and second cause of action, and **DENIES** the motion as to these claims.

**B.   Plaintiff's Third Claim for Relief**

Plaintiff's third claim for relief seeks declaratory relief for "violation of state law," alleging that the "adoption of the rate schedules violates the City Council's obligations under state law and must be declared invalid." (Compl. ¶ 31.) LADWP moves to dismiss the claim.

The Complaint fails to specify what provision of state law LADWP violated in adopting the rate schedules. However, the alleged violation appears to be substantive (not procedural), relating, for example, to whether the rates are reasonable. Plaintiff's Opposition further identifies the section of the City Charter that the rates allegedly violate. Much of LADWP's argument for dismissing the claim appears to go to the merits of the claim, rather than to whether it is sufficiently pled. For example, LADWP asserts that the rates are not discriminatory or unreasonable. However, that question cannot be resolved on a motion to dismiss.

LADWP also asserts that this claim is barred by the sixty-day statute of limitation that applies to "validation actions" under Government Code § 53511 and California Code of Civil Procedure § 860, *et al.* Section 53511 states, "A local agency may bring an action to determine the validity of its bonds, warrants, contracts, obligations or evidences of indebtedness pursuant to Chapter 9 (commencing with

9

Section 860) of Title 10 of Part 2 of the Code of Civil Procedure."[1] However, LADWP has not demonstrated that its utility rates are properly characterized as one of the items listed in section 53511. Arguably, the new rates are akin to "contracts." However, under Kaatz v. City of Seaside, 143 Cal. App. 4th 13 (2007), which analyzed section 53511, its legislative history, and the Supreme Court's discussion in City of Ontario v Superior Court, 2 Cal.3d 335 (1970), the rates challenged herein are not a "contract" within the meaning of the statute. The Court held that "It is [] clear that 'contracts' under Government Code section 53511 should be assigned a restricted meaning. Rather than authorizing proceedings to validate any public agency contract – or even any contract constituting a financial obligation of a public agency – the 'contracts' under Government Code 53511 are only those that are in the nature of, or directly relate to a public agency's bonds, warrants or other evidences of indebtedness." Kaatz, 143 Cal.App.4th at 42. LADWP has not shown – either in its motion or in reply – any substantial basis for concluding that the new rates satisfy this narrow definition of "contracts" or otherwise are "bonds, warrants, . . . obligations or evidences of indebtedness." The Court therefore rejects LADWP's statute of limitations argument, and **DENIES** that motion as to Plaintiff's third claim for relief.

**C.   Plaintiff's Fourth Claim for Relief**

Plaintiff's fourth claim for relief asserts that LADWP violated Plaintiff's due process rights by failing to provide adequate notice

---

[1] Although Plaintiff is not a "local agency" as that term is defined by section 53511, Plaintiff is nevertheless entitled to bring a validation claim under Cal. Code. Civ. Proc. § 863, which states, "[if] no proceedings have been brought by the public agency pursuant to this chapter, any interested person" may bring the same action.

10

prior to adopting the new rates, and that therefore the new rates must be declared invalid.  LADWP contends, however, that insofar as Plaintiff is seeking to invoke federal jurisdiction, it must be doing so under 42 U.S.C. § 1983, the only mechanism available to sue for violations of due process in federal court.  However, a municipality cannot be liable under section 1983 on a respondeat superior theory; rather, any such liability must be predicated upon the existence of a municipal policy, adherence to which violates a federal statute or constitutional provision.  <u>Monell v. Dept. of Social Services</u>, 436 U.S. 658, 691-693 (1978).

Here, Plaintiff makes no allegation whatsoever to the effect that LADWP had a policy that was the moving force of the alleged failure to give notice (the constitutional violation).  As such, this claim is insufficiently pled on its face.  In addition, Plaintiff's Opposition is non-responsive to the motion.  Its reliance on <u>Mullane v. Central Hanover Bank</u>, 339 U.S. 306 (1950) for the point that failure to provide adequate notice violates due process is unavailing for several reasons, including that it is pre-<u>Monell</u> and therefore is non-responsive to the principle articulated in <u>Monell</u> that a municipality cannot be held liable for a section 1983 claim unless the violation was caused by a municipal policy.  The claim therefore fails as pled. Although the Opposition makes no argument that Plaintiff could amend the complaint to cure this deficiency, the Court will nevertheless allow Plaintiff an opportunity to do so, and **GRANTS** the motion as to this claim with leave to amend.

### IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** LADWP's Motion to Dismiss as to Plaintiff's Fourth Claim for Relief, and **DISMISSES**

the claim, but with leave to amend. If Plaintiff wishes to amend the complaint to properly plead its Fourth Claim for Relief, Plaintiff must file an amended complaint **no later than Monday, June 30, 2008.** If the complaint is not so amended by that date, the dismissal will automatically become a dismissal with prejudice.

The Motion is **DENIED** in all other respects.

**SO ORDERED.**

**DATED:    June 20, 2008**

*(signature: Audrey B. Collins)*

_____

**AUDREY B. COLLINS**
**UNITED STATES DISTRICT JUDGE**